LEONARD REED ET AL. v. JOHN W. HACKNEY ET AL.

Argued November 10, 1902—Decided February 24, 1903.

1. When a widow, after the death of her husband, remains in possession of lands of which he died seized, or to which she has not released her right of dower, it is, in law, presumed to be her possession in right of her dower until dower is assigned.

2. If the husband, in his lifetime, has conveyed the land by a deed, in which his wife did not join, and she, after the first husband's death, marries the grantee, who lives with her upon the premises, the possession is the possession of the wife until her dower is assigned, and not the possession of the husband.

3. Such possession by the grantee cannot be set up by those claiming under him, as a possession which will draw to it the possession of an adjoining tract, left in the possession of the widow of the first husband (and over which her right of dower extends), in order to support a title to such adjoining tract by adverse possession.

In ejectment.    On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices VAN SYCKEL, FORT and PITNEY.

For the plaintiffs, *Eli H. Chandler* and *George A. Bourgeois.*

For the defendants, *William M. Clevenger* and *Thompson & Cole.*

The opinion of the court was delivered by

VAN SYCKEL, J.    This is an action of ejectment brought to recover possession of about four and one-half acres of land in the county of Atlantic.

At the opening of the trial below the plaintiffs disclaimed title to the southerly half of said tract, and claimed title only to the northerly half.

The plaintiffs traced their title back to James Adams, who derived his title from Thomas Adams by a deed dated in 1827, which was produced in evidence.

The trial court properly construed this deed as a conveyance of the northerly half of the lot therein described.

In proving title the plaintiffs gave in evidence, among other things, family history and relationship, which was objected to as incompetent, because it had not been set forth in the bill of particulars of title furnished to the defendants.

This bill of particulars is not in the printed case, and the court is without accurate knowledge of what it contains.

In *Graham v. Whitely, 2 Dutcher* 254, Chief Justice Green pronounced the rule to be that if the bill of particulars merely specifies the documentary evidence upon which the party intends to rely, including the will of W. B., the party is not thereby restricted to a claim of title by devise, nor prevented from establishing by parol a title from W. B. by descent.

There was therefore no error in permitting the plaintiffs to show that they are the descendants and legal heirs of James Adams, who, so far as appears in the case, died without having disposed of the *locus in quo,* either by deed or by will.

The plaintiffs' evidence shows that the title which inhered in James Adams passed to them as his heirs-at-law.

But in an action of ejectment the plaintiff must trace his title back to some one who is shown to have been in possession, or, failing in that, he must show that his grantor acquired title from the original proprietors. If they succeeded in that, they established a *prima facie* title, which put upon the defendants the burden of showing a better title.

In *Troth* v. *Smith, 39 Vroom* 36, the plaintiff's paper-title was derived from the heirs of Jeremiah Leeds, and it was held to be sufficient, in support of their possession, to show that upon their petition commissioners were duly appointed by a court of competent jurisdiction to divide the said lands among the heirs, and that said commissioners, in the execution of their duty, did make the division which was of record.

To show possession in James Adams, the plaintiffs offered in evidence a deed from Jeremiah Adams to James Adams, dated in 1808, for an eighteen-acre tract of land known as "Buzzards Roost," adjoining the *locus in quo.*

To the admission of this deed objection was made on the part of the defendants, but the trial court permitted the bill of particulars to be amended, and also held that, it being competent to prove by parol possession in James Adams, this deed must be regarded as an aid to that proof, and not as a conveyance strictly in the chain of plaintiffs' title to be set out in the bill of particulars. In this respect the objection was properly dealt with.

James Adams died in 1834.

Jemima, his widow, died in 1873.

This suit was commenced in 1900.

There was some evidence to show that James Adams was living on the "Buzzards Roost" property when he died, and that the *locus in quo* was in the same enclosure.

James Adams left his widow, Jemima, surviving him, and she remained in possession of the house on "Buzzards Roost" until 1872, when she removed, and died in the following year.

Under these circumstances the court properly charged the

jury that the deed to James Adams for the *locus in quo* was sufficient *prima facie* evidence of the plaintiffs' title, derived from James.

James Adams conveyed "Buzzards Roost" to John Adams, through whom defendants claim, in 1833, but Jemima Adams did not join in this deed.

Jemima Adams, therefore, after the death of her husband, James Adams, was presumably in possession of both tracts in right of her dower, and until dower was assigned, of which there was no proof.

It does not appear that John Adams had any paper-title to the *locus in quo* from James Adams, or from anyone having a paramount title to that of James, and there are no facts shown to justify the presumption of such a conveyance.

The defendants must therefore stand on a title by adverse possession.

During the life of Jemima, whom John married after the death of James, the possession of John was not adverse.

Jemima was entitled to retain possession until her dower was assigned in the lands of James Adams, and therefore up to the time she removed from the premises in 1872, no time had run against the title of the plaintiffs.

When the sheriff, by virtue of an execution against John Adams, sold his interest in the said lands, in 1842, John had no paper-title to the *locus in quo*, and no possession which could draw to it the possession of the *locus in quo*.

The fact that John, after his interest in the lands was sold by the sheriff in 1842, remained in possession with Jemima, the widow of James, whom he had married, gave John no such possession as if continued would be adverse.

It was, in contemplation of law, the possession of Jemima Adams, in right of her dower, and not the possession of John.

John had the right to live there with his wife, and the heirs of James could not until her dower was assigned have succeeded in evicting him.

Therefore, adverse possession to support the defendants' title could not have begun to run until after 1872.

Whether since that date the defendants and those under

whom they claim had been in such continuous, open, notorious and hostile possession for twenty years as constituted a title by adverse possession, was a question of fact, which was submitted to the jury with proper instructions.

The verdict for the plaintiffs was not so clearly against the weight of evidence as to justify this court in setting it aside.

The rule to show cause should be discharged.